DECISION AND JOURNAL ENTRY
{¶ 1} Felicia R. has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, J.A., and placed her in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} J.A., born March 22, 2005, is the daughter of Felicia R. ("Mother") and Steven M. ("Father"). Father is not a party to the present appeal, and Mother has not argued that the child should have been returned to her. Instead, Mother has appealed on the basis that the trial court incorrectly denied legal custody to Cindy Murphy, the child's maternal grandmother ("Grandmother").
 {¶ 3} CSB had been involved with this family since 2004. In addition to J.A., Mother had two sets of twins, but she no longer has custody of them. Mother agreed to the termination *Page 2 
of her parental rights as to one set of twins, born September 8, 2000, and she also agreed to the placement of the second set of twins, born July 11, 2002, in the legal custody of their father.
 {¶ 4} J.A. was removed from Mother's home pursuant to Juv. R. 6 on May 1, 2006 due to hazardous conditions in the home and a failure to meet the child's basic needs. In its complaint, CSB expressed concern with the lack of food, unsanitary conditions, Mother's mental health and substance abuse, and Mother's inability to properly supervise the child. Following hearings, the trial court found J.A. to be neglected and dependent, and placed the child in the temporary custody of CSB. The case plan required Mother: (1) to maintain safe, clean, and independent housing; (2) to provide for the basic needs of this child, including nutritious meals, and adequate supervision, discipline, clothing, and hygiene; (3) to successfully complete a parenting program and to demonstrate what she learned in interactions with her child; (4) to complete a chemical dependency assessment and follow all recommendations, including random urine screens; and (5) to obtain income sufficient to meet the child's needs.
 {¶ 5} In March 2007, CSB moved for a six-month extension of temporary custody and for legal custody to Father. By July 2007, Mother recognized her inability to care for J.A. and, while she opposed legal custody to Father, requested that legal custody be granted to Grandmother. On October 5, 2007, CSB withdrew its motion for legal custody to Father and sought permanent custody in the agency. Following a hearing, the trial court granted CSB's motion for permanent custody and terminated the parental rights of Mother and Father. The trial court overruled all other dispositional motions, including the motion for legal custody to Grandmother. Mother has timely appealed and has assigned two errors for review. *Page 3 
 II Assignment of Error Number One "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO APPELLEE WHEN THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTED THE CONCLUSION THAT A LEGALLY SECURE PERMANENT PLACEMENT COULD BE ACHIEVED IN MATERNAL GRANDMOTHER'S CUSTODY WITHOUT THE GRANTING OF PERMANENT CUSTODY AND THE TERMINATION OF APPELLANT'S PARENTAL RIGHTS."
 Assignment of Error Number Two "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTIONS FOR LEGAL CUSTODY TO MATERNAL GRANDMOTHER."
 {¶ 6} In these two assignments of error, Mother has argued that the trial court erred in granting permanent custody to CSB and that it should have, instead, granted legal custody to Grandmother. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also,In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 7} The trial court found that the first prong of the permanent custody test was satisfied because J.A. had been in the temporary custody of CSB for at least 12 of the prior 22 months. Mother has not contested that finding. She has challenged only the finding on the best *Page 4 
interest prong of the permanent custody test, and only insofar as the trial court failed to grant legal custody to Grandmother.
 {¶ 8} The record supports Mother's conclusion that she is unable to care for her daughter. The current caseworker, Claudia Provance, testified that Mother had completed very little of her case plan and lacked the ability to care for J. A. For example, Mother did not have independent housing. She was terminated from three drug treatment programs for non-attendance. She failed to follow through with treatment recommendations for her depression and bipolar disorder. She threatened the life of her first caseworker. She failed to obtain employment and did not engage in parenting classes. The caseworker believed that Mother's lack of stability could place the child at risk of harm. Accordingly, the primary question before the trial court was whether the child should be placed in the legal custody of Grandmother.
 {¶ 9} The best interest factors of R.C. 2151.414(D) are not only relevant to the question of permanent custody, but also provide appropriate guidance in determining whether a grant of legal custody is in the best interest of a child. See In re T.A., 9th Dist. No. 22954,2006-Ohio-4468, at ¶ 17. Thus, this Court must determine whether the trial court erred in concluding that permanent custody, as opposed to legal custody to Grandmother, was in the best interest of J.A., based upon a consideration of the factors in R.C. 2151.414(D).
 {¶ 10} A best interest determination under R.C. 2151.414(D) requires consideration of:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies *Page 5 
or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
 {¶ 11} The evidence demonstrated that Grandmother has a loving relationship with J.A. Grandmother has been very consistent in visiting with the child. She is bonded to the child and her visits are appropriate. She brought homemade lunches for J.A. and played with her. They demonstrated affection towards each other.
 {¶ 12} As to J.A.'s other relationships, Mother failed to visit consistently, and Father stopped visiting in March 2007. Grandmother's husband provided transportation to visits for Grandmother and saw J.A. once or twice a month, but he was said to have a drug problem and was no longer living with Grandmother. J.A. is currently placed with two half-siblings who are in CSB's permanent custody, but it is uncertain whether the three would remain together because the two half-siblings have numerous behavioral problems and J.A. has begun to mimic them. There was no evidence of a positive relationship between the child and any other relatives. J.A. does have a good relationship with her foster family and is doing well in that placement.
 {¶ 13} The wishes of this young child were expressed by the guardian ad litem, who opined that it would be in the best interest of J.A. to be placed in the permanent custody of CSB. The custodial history of J.A. revealed that she was in Mother's custody for the first 13 months of her life and was in CSB custody for the next 21 months.
 {¶ 14} There is no dispute as to the child's need for a legally secure permanent placement; the only question is whether Grandmother could provide such a placement. The trial *Page 6 
court specifically found that Grandmother could not provide J. A. with a legally secure permanent placement and that permanent custody was the only means to achieve that goal. Although Grandmother had a loving relationship with J.A., the trial court concluded that that factor was outweighed by Grandmother's inability to provide a legally secure permanent placement for J.A., specifically due to her failure to follow through with mental health treatments, financial problems that could affect her ability to provide for basic needs, and lack of good judgment regarding J.A.'s care. Mother has challenged this determination by the trial court.
 {¶ 15} It should be noted that this single best interest factor is only a part of the trial court's calculus in determining the best interest of the child. Nevertheless, there was ample evidence before the trial court from which it could conclude that Grandmother could not provide a legally secure placement for J.A., and the trial court could properly determine that permanent custody was in J.A.'s best interest. Notably, the evidence revealed that Grandmother had been consistently involved with all five children who were eventually removed from Mother's care. After Mother's four older children were removed, they were diagnosed with numerous behavioral and developmental problems and were unable to behave in an age-appropriate manner. When the two oldest children started school, they tested far behind their classmates in readiness for school. It took nearly six months before they could participate appropriately in a classroom. The guardian ad litem believed the poor parenting skills of Mother and Grandmother were largely responsible for the behavioral problems of these children.
 {¶ 16} In addition, Grandmother and Mother both testified that they visited with each other daily. Grandmother's consistent involvement with the family throughout Mother's longstanding substance abuse problems and the deplorable condition of her home provided evidentiary support for the trial court's finding that the condition of the children reflected poorly *Page 7 
on Grandmother's parenting ability. Further, Mother testified that she would continue to come to Grandmother's home and help care for J.A. The guardian ad litem indicated that, in light of the extremely close relationship between Mother and Grandmother, she had a difficult time imagining their relationship changing. Caseworker Provance believed that the continued involvement of Mother in the care of J.A. might put the child at risk.
 {¶ 17} Furthermore, there was testimony regarding Grandmother's general character. Mary Gibbs Mitchell, the guardian ad litem, and Marcia Korane, the first caseworker, both testified that Grandmother had been uncooperative. According to the guardian ad litem, Grandmother was "out of control" at times. Ms. Korane testified that Grandmother could not handle stress and lacked coping skills. According to the caseworker, when Grandmother became upset, angry, or sad, she overreacted and was unable to control her emotions or communicate. Such testimony is corroborated by Grandmother's admission that she was recently charged with criminal damaging when she broke a windshield wiper off a car in anger and was obligated to make restitution to the owner. Grandmother's criminal record includes a twenty-year-old conviction for forgery as well as a conviction for felony theft. The guardian ad litem opined that her two recent misdemeanor charges (criminal damaging and the open container law) were more disturbing because they occurred after Grandmother sought legal custody of J.A.
 {¶ 18} Finally, Mother has argued that the result of a 2006 home study prepared in response to Grandmother's request for legal custody of all five of Mother's children was not relevant to the current request to place just one child with her. Melissa Vein, the CSB kinship worker who conducted the home study, testified, however, that many of the concerns expressed in that study continued. Ms. Vein noted that Grandmother had not had a recent mental health evaluation. Although Grandmother claimed that she did not require treatment for depression and *Page 8 
has not had a seizure for three or four years, she delayed in scheduling the requested mental health evaluation for four months and was unable to complete it before the hearing. There was additional evidence before the trial court that Grandmother stopped taking her medication because she had lost her Medicaid card and that she was not licensed to drive because of her seizure disorder.
 {¶ 19} Ms. Vein also indicated that Grandmother has had financial difficulty in providing for her basic needs. At the time of the 2006 home study, Grandmother's electricity was turned off for nonpayment of her utility bill. In her appellate argument, Mother has claimed that Grandmother has no current money problems. Yet, Grandmother admitted she sometimes has a problem paying her bills, a friend occasionally helps her with utility bills, and she is currently required to make payments on debts totaling $4128 in restitution charges. Although there is no doubt that Grandmother loves J.A., the evidence supports the trial court's conclusion that a secure and permanent home for the child can be accomplished only through a grant of permanent custody to the agency.
 {¶ 20} The fifth best interest factor, R.C. 2151.414(D)(5), permits consideration of any of the factors in R.C. 2151.414(E)(7) to (11) that apply in relation to the parents and child. Mother has claimed that the trial court erred in citing R.C. 2151.414(E)(10) and R.C. 2151.414(E)(11) in regard to the fifth best interest factor. R.C. 2151.414(E)(10) refers to abandonment by a parent, and R.C. 2151.414(E)(11) refers to the prior involuntary termination of parental rights as to a sibling of the child. Mother has asserted error in the trial court's citation of these provisions, arguing that Mother did not abandon J. A. and her parental rights were not involuntarily terminated in regard to a sibling of J.A. *Page 9 
 {¶ 21} It is significant that R.C. 2151.414(E)(10) and R.C. 2151.414(E)(11) were not cited by the trial court as part of a determination on the first prong of the permanent custody test, which may be satisfied by a determination that the child could not or should not be placed with a parent in reliance on any one of the factors in R.C. 2151.414(E). See R.C. 2151.414(B)(1)(a). The first prong was satisfied, instead, by the finding that J. A. had been in CSB custody for more than 12 of the last 22 months. See R.C. 2151.414(B)(1)(d). These two factors were cited by the trial court as being relevant to a determination of the best interest of the child under R.C. 2151.414(D)(5), insofar as they "apply in relation to the parents and child." Id.
 {¶ 22} In that context, we reiterate that this appeal does not present the question of whether it is in the best interest of J.A. to be returned to Mother, but rather calls for resolution of the question of whether it is in the best interest of J.A. to be placed in the legal custody of Grandmother. Questions of whether Mother abandoned J.A. or had her parental rights terminated in regard to a sibling of J.A. would be relevant, if at all, to Mother, but are not relevant to the question of whether it is in J.A.'s best interest to be placed in the legal custody of Grandmother. Consequently, any error by the trial court in referring to these factors in its decision is harmless.
 {¶ 23} Finally, Mother has argued that the trial court erred in granting permanent custody to the agency because it failed to comply with R.C. 2151.412(G). She has relied upon that provision in asserting that children who cannot be placed with a parent should be placed in the legal custody of a suitable relative. However, as demonstrated, the trial court followed the proper statutory guidelines and considered the appropriate statutory factors in making its custody determination. There is no requirement that the court consider R.C. 2151.414(G) in determining whether to grant permanent custody of a child to a children's services agency. *Page 10 
 {¶ 24} R.C. 2151.412(G)(2) provides as follows:
 "(G) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 "* * *
 "(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family[.]"
 {¶ 25} By its terms, this section provides that "the agency and the court shall be guided by the following general priorities" in the "agency's development of a case plan and the court's review of the case plan." (Emphasis added.) R.C. 2151.412(G). Thus, as conceded by Mother, the statute offers only discretionary guidance and is not mandatory. See, also, In re Halstead, 7th Dist. No. 04C037, 2005-Ohio-403, at ¶ 39 (recognizing that "the language in R.C. 2151.412(G) is precatory, not mandatory"). A trial court "is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody." In re Dylan B., 5th Dist. No. 2007-CA-00362, 2008-Ohio-2283, at ¶ 66.
 {¶ 26} Moreover, this legislation is relevant to case planning efforts during the temporary placement of a child in the midst of a custodial proceeding as opposed to a determination on the best interests of that child at the conclusion of a permanent custody proceeding. See In reOliver, 5th Dist. No. 2006CA00210, 2007-Ohio-267, at ¶ 31. See, also,In re Hiatt (1993), 86 Ohio App.3d 716, 722. Accord In re Dye (Apr. 19, 1995), 9th Dist. Nos. 16927, 16932 (finding consideration of R.C. 2151.412(G) to be appropriate during the reunification phase of the case). The trial court did not err in violation of R.C. 2151.412(G) when it denied the motion to grant legal custody to Grandmother and granted permanent custody to CSB. *Page 11 
 {¶ 27} The record demonstrates that there was clear and convincing evidence before the trial court from which it could conclude that permanent custody was in J.A.'s best interest. The trial court did not abuse its discretion or otherwise err in denying legal custody to Grandmother. Consequently, the trial court did not err in terminating the parents' parental rights or in placing J.A. in the permanent custody of the agency. Mother's two assignments of error are overruled.
 III {¶ 28} Mother's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to Appellant. *Page 12 
 MOORE, P. J. DICKINSON, J. CONCUR *Page 1