[Cite as *In re K.B.*, 2024-Ohio-491.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

    K.B.

    D.B.

    M.B

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case Nos. 2023 CA 00072, 00073,
        and 00074

O P I N I O N


CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas,
Juvenile Division, Case Nos.
2021JVC00476, 00477, and 00478


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     February 8, 2024


APPEARANCES:

For Appellee SCJFS

ALLISON TUESDAY
402 2ND Street, SE
Canton, Ohio 44702

Counsel for Mother

COLE BOND
116 Cleveland Avenue, NW, Suite 600
Canton, Ohio 44702

For Appellant Father

RICHARD D. HIXSON
3808 James Court, Suite 2
Zanesville, Ohio 43701

Guardian ad Litem

KATHALEEN O'BRIEN
116 Cleveland Avenue, NW, Suite 303
Canton, Ohio 44702

*Wise, J.*

**{¶1}** Appellant-Father E.W. appeals the July 5, 2023, Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated his parental rights, privileges, and responsibilities with respect to his minor children K.B., D.B., and M.B., and granted permanent custody of the children to Appellee Stark County Department of Job and Family Services ("SCJFS").

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother N.B. and Appellant-Father E.W. are the biological parents of the minor children K.B. (DOB 3/10/2011), D.B. (DOB 3/17/2014) and M.B. (DOB 1/12/2018).

**{¶3}** On May 19, 2021, Stark County Job and Family Services (SCJFS) filed a Complaint alleging the dependency and/or neglect of K.B. (DOB 3/10/2011), D.B. (DOB 3/17/2014) and M.B. (DOB 1/12/2018) and an emergency order requesting that the children be placed into the emergency temporary custody of SCJFS. (T. at 6). The allegations contained in the Complaint detailed concerns regarding substance abuse by the mother of the children, deplorable home conditions, cleanliness of the children, lack of supervision of the children, and failure of the parents to provide for the children's basic needs. (T. at 9-10). SCJFS later received additional concerns regarding the sexual abuse of the children. (T. at 10, 55-56, 59).

**{¶4}** On May 20, 2021, the trial court held an emergency shelter care hearing and found that probable cause existed for the issuance of the emergency orders, along with several other findings. (T. at 7)

**{¶5}** On July 13, 2021, the trial court found the children to be dependent and placed the children into the temporary custody of SCJFS. (T. at 7). The trial court

approved and adopted the initial case plan, found that SCJFS had engaged in reasonable efforts to prevent the need for the removal of the children, and made several other findings. (T. at 7). Specifically, the trial court found that Appellant was not interested in placement of the children and did not desire to participate in case plan services.

{¶6} On November 16, 2021, the trial court reviewed the case. (T. at 7-10). The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and ordered status quo. The trial court also suspended Appellant's visitation with the children until further court order after finding that visitation with Appellant was upsetting the children. (T. at 23). Appellant did not object to the trial court's order.

{¶7} On April 15, 2022, the trial court again reviewed the case. (T. at 7-10). The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, along with several other findings. The trial court also modified Appellant's visits to be at the discretion of the children's therapists.

{¶8} On May 18, 2022, the trial court extended the temporary custody of the children to SCJFS until November 19, 2022. (T. at 7-10). The trial court also found that SCJFS had made reasonable efforts to finalize the permanency planning in effect.

{¶9} On October 14, 2022, the trial court again reviewed the case. (T. at 7-10). The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and several other findings.

{¶10} On November 17, 2022, the trial court again extended the temporary custody of the children to SCJFS until May 19, 2023. (T. at 7-10). The Guardian ad Litem

for the children made an oral motion to suspend visitation with Appellant. The trial court set the motion for further hearing on November 30, 2022.

{¶11} On November 30, 2022, the trial court reviewed the motion to suspend visitation. The motion was set for further hearing on December 20, 2022, and the trial court asked the Guardian ad Litem to file a written motion.

{¶12} On December 15, 2022, the Guardian ad Litem filed motions to suspend visitation between Appellant and the children.

{¶13} On December 20, 2022, the trial court continued the pending motions to suspend visitation to February 8, 2023.

{¶14} On February 8, 2023, the trial court suspended all visitation between the children and Appellant. (T. at 23-25).

{¶15} On March 29, 2023, SCJFS filed motions seeking permanent custody of the children. (T. at 3).

{¶16} On May 26, 2023, the trial court again reviewed the case. The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and several other findings. The trial court also found that there were no compelling reasons to preclude a request for permanent custody. Specifically, the trial court found that "neither parent seems to have an appreciation for the trauma the children experienced" and "the parents simply have not fully taken advantage of the services offered". Appellant did not object to the order.

{¶17} On June 20, 2023, Attorney Kathaleen O'Brien, the Guardian ad Litem for the children, filed her final report. In her report, Attorney O'Brien noted several concerns with Appellant's ability to safely parent the children. Ultimately, Attorney O'Brien

recommended that permanent custody be granted as it was in the children's best interests.

**{¶18}** On June 27, 2023, the trial court heard evidence on the motions requesting permanent custody of the children. During the first phase of the hearing, the trial court heard testimony and received evidence from SCJFS Caseworker Kimberly Gabel, Dr. Steven Dean, Erin Peltz (Goodwill Parenting Instructor), and Guardian ad Litem Attorney Kathaleen O'Brien as follows:

**{¶19}** Ms. Kimberly Gabel testified that she is employed by SCJFS as the caseworker assigned to the case. (T. at 4). She testified that the initial concerns in the case involved substance abuse by the mother of the children and the children's basic needs not being met (T. at 9-10). She testified that, after receiving custody of the children, SCJFS received additional concerns about the sexual abuse of the children. (T. at 10). She testified as to the procedural history of the case as set forth above.

**{¶20}** Caseworker Gabel further testified that the children had been in the continuous temporary custody of SCJFS for over two years. (T. at 8-9).  Ms. Gabel testified that the case plan included trauma evaluations for the children. (T. at 11). She testified that the evaluations diagnosed the children with a combination of post-traumatic stress disorder and adjustment disorder and recommended for the children to engage in counseling to address past trauma. (T. at 11). Ms. Gabel testified to the concerns regarding the mother of the children including her mental health issues, drug use, and parenting ability, and to her general lack of compliance with case plan services and inability to remedy the risk she posed to the children.

**{¶21}** Caseworker Gabel testified that Appellant-Father's initial case plan consisted of completing a parenting assessment and following through with all resulting recommendations, substance abuse treatment, establishing sobriety, mental health treatment, and parenting classes. (T. at 19). She testified that Appellant-Father completed a parenting evaluation which recommended that he engage in comprehensive mental health treatment, Goodwill Parenting Classes, and demonstrate healthy boundaries with the mother of the children. (T. at 19). The evaluation was admitted into evidence. (T. at 3).

**{¶22}** Caseworker Gabel testified that Appellant-Father completed a mental health assessment in July, 2021, was diagnosed with PTSD and cannabis abuse, and was recommended to engage in outpatient individual counseling. (T. at 19). She testified that Appellant did not engage in treatment and was discharged in October, 2021. (T. at 20). She testified that Appellant completed a second assessment in July, 2022, but was again discharged after not engaging in services. (T. at 20). She testified that, despite the multiple recommendations, Appellant stated that he would not be doing mental health treatment. (T. at 20). Ms. Gabel testified that she remains concerned about Appellant's mental health due to his very emotional presentation and refusal to engage in treatment. (T. at 20-21).

**{¶23}** Caseworker Gabel testified that Appellant-Father was placed on drug screening via the color code method in December, 2022. (T. at 21). She testified that Appellant missed 36 of his 47 drug screens and tested positive for marijuana in six of the 11 screens he did take. (T. at 21). She testified that Appellant did not provide proof of having a medical marijuana card. (T. at 27).

**{¶24}** Ms. Gabel testified that Appellant-Father started Goodwill Parenting in September, 2022. (T. at 21). She explained that Goodwill Parenting was the most comprehensive parenting program available and that several agencies in several counties use the program. (T. at 35-37). She testified that Appellant did not successfully complete the program and was subsequently recommended to engage in mental health treatment and to have no unsupervised contact with the children. (T. at 22).

**{¶25}** Caseworker Gabel testified that Appellant-Father's visitation with the children was suspended by the trial court in November, 2021, and modified to visitation in a therapeutic setting only in April, 2022. (T. at 22-23).

**{¶26}** Ultimately, Ms. Gabel testified that the original concerns had not been remedied, Appellant-Father was not engaging in services, and Appellant could not provide an adequate home for the children. (T. at 25). She testified that she had made reasonable efforts to try to reunify the children and that there were no extensions of temporary custody remaining on the case. (T. at 26).

**{¶27}** Next, the trial court heard testimony from Dr. Steve Dean who testified for SCJFS. (T. at 38-49). Appellant stipulated to Dr. Dean being qualified as an expert witness. (T. at 38-39). Dr. Dean testified that he conducted a psychological assessment on the mother of the children and that he made a report detailing the assessment. (T. at 40). The report was admitted into evidence without objection. (T. at 41-42). Dr. Dean testified that the mother of the children disclosed a history of domestic violence by Appellant. (T. at 44).

**{¶28}** Ms. Erin Peltz, a parenting instructor for Goodwill Industries, also testified for SCJFS. She testified that parenting instructors for the program lead the class, provide

the class with information on the topics, and supervise visits. (T. at 50). She was not qualified as an expert witness and Appellant did not object to any portion of her testimony. (T. at 49-89). She testified that the course is a 10-week program with classes and 10 hours of supervised visitation with the children. (T. at 50). She testified that the course is used by clients in eight counties. (T. at 51). She testified that the goal of the program is to enhance parenting skills by providing parents with parenting knowledge and helping them overcome their parenting deficits. *Id.*

**{¶29}** Ms. Peltz testified that the mother of the children participated in the program. (T. at 52). She testified that she made a report detailing her involvement in the class. (T. at 42). The report was admitted into evidence without objection. (T. at 53).

**{¶30}** Ms. Peltz testified that Appellant-Father also participated in the program. (T. at 52). She testified that she made a report detailing his involvement in the class. (T. at 42). The report was admitted into evidence without objection. (T. at 53).

**{¶31}** Ms. Peltz stated that Appellant-Father was referred to the program due to the children's history with sexual abuse. (T. at 59). Ms. Peltz explained that K.B. was sexually abused by her grandfather and that she then sexually abused her brother D.B. *Id.* K.B. and D.B. then sexually abused their younger sister M.B. *Id.*

**{¶32}** Ms. Peltz testified that Appellant-Father did not retain the information presented in class. (T. at 59). She testified that she offered to meet with Appellant individually, but he did not do so. *Id.* She testified that Appellant had four unexcused absences during the class and one tardy. (T. at 60). She testified that Appellant was "very histrionic" in class, did not stay on topic, and was not able to focus on the information

presented during class. *Id.* Ultimately, she testified that Appellant did not successfully complete the program and earned a certificate of noncompliance. (T. at 61).

**{¶33}** Ms. Peltz testified that she had several concerns for Appellant-Father's parenting during visitation with the children. (T. at 61). She testified that the visitation was "confusing for the children ... unstructured ... chaotic". (T. at 65). She testified that Appellant was "dismissive" with the children and ignored their overly sexualized behaviors. (T. at 61). She testified that one of the children was "humping the ground" during a visit and Appellant ignored the behavior and continued to play with toys. (T. at 62). She testified that Appellant's failure to recognize the behavior was especially concerning due to the children's history of sexual abuse. (T. at 63). She testified that she did not believe Appellant would help the children with their trauma. (T. at 64). She testified that Appellant did not discipline the children for their behaviors during visitation. (T. at 68). She testified that Appellant could not handle more than one child at a time and required extensive assistance from staff. (T. at 68). Ms. Peltz testified that Appellant-Father stated that he did not believe parents should parent children of the opposite sex and that he did not want placement of his female children. (T. at 67).

**{¶34}** She testified that M.B. did not participate in the visitation due to the recommendation of her counselor. (T. at 67). Ms. Peltz testified that she recommended for Appellant-Father to engage in mental health treatment due to his presentation during class but that he refused to do so. (T. at 70-71). She testified that she saw no improvement with Appellant's parenting during the course and actually saw "a downward spiral in him towards the end". (T. at 72).

**{¶35}** SCJFS then rested. Appellant offered no evidence for the first phase of trial.

**{¶36}** The trial court proceeded to the second phase of the trial, wherein SCJFS presented additional testimony from Caseworker Gabel regarding the best interests of the children.

**{¶37}** Caseworker Gabel testified that K.B. is on an IEP and struggles behaviorally in school. (T. at 91). She testified that D.B. doesn't qualify for an IEP but also struggles in school. (T. at 91). She testified that M.B. is "fairly typical" developmentally. (T. at 91). She testified that the children have no major health concerns. (T. at 91).

**{¶38}** Ms. Gabel testified that the children have experienced a significant amount of trauma. (T. at 91-92). She testified that K.B. is 12 years old and still wets the bed nightly and defecates herself. (T. at 91). She testified that K.B. and D.B. are prescribed mental health medication. (T. at 91-92). She testified that the children are all in mental health treatment due to recommendations from trauma evaluations. (T. at 92).

**{¶39}** Ms. Gabel testified that K.B. is placed in a foster home, D.B. is placed with a maternal aunt, and M.B. is placed with an after-born sibling in a different foster home than K.B. (T. at 93). She testified that the children were initially placed together in the same foster home but were separated due to them engaging in sexually inappropriate behavior on each other. (T. at 93).

**{¶40}** Caseworker Gabel testified that the children were all making improvements in their placements. (T. at 94). She testified that M.B.'s foster home is interested in adoption. (T. at 95). She testified that M.B. is bonded with her foster parents and adapted well to the family. (T. at 95). She testified that K.B.'s foster home is not interested in adoption. (T. at 96). She testified that the maternal aunt is interested in adopting D.B. (T. at 96-97).

**{¶41}** Ms. Gabel testified that Appellant-Father's visitation with the children was suspended in November, 2021, due to sexual abuse allegations. (T. at 98). She testified that in April, 2022, the trial court altered the suspension to allow for visitation in a therapeutic setting. (T. at 99). She testified that Appellant visited D.B. and K.B. at the Agency from April, 2022, to September, 2022, and then at Goodwill Parenting. (T. at 99-100). She testified that Appellant did not visit M.B. after November, 2021, except for one visit which resulted in M.B.'s behavior regression. (T. at 100-101). She testified that Appellant was not interactive with the children during visitation. (T. at 100). She testified that D.B. "has a love for" Appellant, but K.B. is not bonded with Appellant. (T. at 103).

**{¶42}** Ms. Gabel testified that permanent custody of the children is in their best interests. (T. at 97). She testified that there are no appropriate relatives to take custody of the children. *Id.* She testified-that the damage of severing the parental bond is outweighed by the benefit of permanency. (T. at 103).

**{¶43}** SCJFS rested for the second phase of the trial. Appellant again offered no evidence.

**{¶44}** Attorney O'Brien made a statement resting on her report recommending that permanent custody be granted to the Agency. (T. at 106).

**{¶45}** At the conclusion of the hearing, the trial court took the matter under advisement.

**{¶46}** By Judgment Entry filed July 5, 2023, the trial court issued its findings of fact granting permanent custody of the children to SCJFS and terminating the parental rights of Appellant.

**{¶47}** It is from this Judgment Entry Appellant-Father appeals, assigning the following errors:

**ASSIGNMENTS OF ERROR**

**{¶48}** "I. THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF K.B., D.B., AND M.B., AS SUCH A FINDING WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶49}** "II. THE TRIAL COURT ERRED IN DETERMINING THAT STARK COUNTY JOB AND FAMILY SERVICES MADE REASONABLE EFFORTS.

**{¶50}** "III. THE CASE PLAN OF STARK COUNTY JFS WAS NOT GUIDED BY THE GENERAL PRIORITIES ENUMERATED IN R.C. 2151.412(H).

**{¶51}** "IV. THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY OF D.B. TO STARK COUNTY JFS VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW."

**{¶52}** This case comes to us on the expedited calendar and shall be considered in compliance with App.R. 11.2(C).

**I.**

**{¶53}** In his first assignment of error, Appellant-Father maintains the trial court's finding an award of permanent custody was in the best interest of the minor children was against the manifest weight and sufficiency of the evidence. We disagree.

**{¶54}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v.*

*Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶55}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶56}** Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶57}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C.

§2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶58}** In this case, it is undisputed that the minor children have been in the custody of the Agency for twelve or more months out of the consecutive twenty-two-month period. Therefore, we proceed to consider the applicability of the best interest factors.

**{¶59}** We review a trial court's best interest determination under R.C. §2151.414(D) for an abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. A trial court's failure to base its decision on a consideration of the best interest of the child constitutes an abuse of discretion. *In re R.S.,* 8th Dist. Cuyahoga No. 111353, 2022-Ohio-4387, ¶ 45 (Citation omitted). An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable*. Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶60}** In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

**{¶61}** The juvenile court has considerable discretion in weighing these factors. *In re D.A., supra* at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. §2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *Id.* at ¶ 64.

**{¶62}** Appellant-Father argues the trial court abused its discretion in finding permanent custody to be in the best interest of the children, arguing the trial court should have placed more weight on R.C. 2151.414(D)(1)(d). However, no single factor is given greater weight or heightened significance. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57.

**{¶63}** As set forth in detail above, the caseworker involved with the family testified the children have all experienced a significant amount of trauma. (T. at 91-92). She testified that both K.B. and D.B. both struggle in school and K.B. is on an IEP. (T. at 91). K.B. and D.B. are also both prescribed mental health medication. (T. at 91-92). All three children are in mental health treatment as recommended by their trauma evaluations. (T. at 92).

**{¶64}** The caseworker testified that while the children were initially placed together, they had to be separated due to the children committing sexual abuse on one another. (T. at 93). She stated that the children were all doing well in their individual placements and were making improvements. (T. at 94). She testified that M.B. is bonded

with her foster parents and that they are interested in adoption. (T. at 95-96). D.B. is also doing well with his maternal aunt and she is interested in adopting him. (T. at 96-97).

**{¶65}** As to Appellant-Father's visitation and interaction with the children, the Caseworker testified that Appellant-Father's visitation with the children was suspended in November, 2021, due to sexual abuse allegations and that in April, 2022, the trial court altered the suspension to allow for therapeutic visitation. (T. at 98-99). She testified that Appellant visited D.B. and K.B. at the Agency from April, 2022, to September, 2022, and then at Goodwill Parenting. (T. at 99-100). She testified that Appellant only visited M.B. once after November, 2021, and that visit resulted in M.B.'s behavior regression. (T. at 100-101). She testified that Appellant was not interactive with the children during visitation. (T. at 100). She testified that D.B. "has a love for" Appellant, but K.B. is not bonded with Appellant. (T. at 103). Ms. Gabel testified that permanent custody is in the best interests of the children. (T. at 97). She also testified that there are no appropriate relatives to take custody of the children. (T. at 97). Finally, she testified that the damage of severing the parental bond is outweighed by the benefit of permanency. (T. at 103).

**{¶66}** Caseworker Gabel also testified that despite multiple recommendations for Appellant-Father to engage in substance abuse treatment, individual counseling and mental health treatment, Appellant refused. (T. at 20-21). She testified that he missed 36 of 47 drug screens and tested positive for marijuana use six of those remaining eleven times. (T. at 20-21). She further testified that Appellant failed to complete the Goodwill Parenting program. (T. at 22). Additional testimony from Dr. Dean and Goodwill Industries parenting instructor Erin Peltz supported Ms. Gabel's concerns.

{¶67} Based on the record before us, we find there was competent, credible evidence Appellant-Father failed to remedy the problems which caused the removal of the minor children from the home, and that an award of permanent custody was in the children's best interest and was not against the manifest weight of the evidence.

{¶68} Appellant-Father's first assignment of error is overruled.

**II.**

{¶69} In his second assignment of error, Appellant argues that the trial court erred in finding that SCJFS made reasonable efforts. We disagree.

{¶70} R.C. §2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

{¶71} However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. §2151.419(B)(1), we have found that the ultimate issue is the reasonableness of the Agency's efforts and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767 (Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶ 19; *In Re: M.M.*, 5th Dist. Stark No. 2021CA00159, 2022-Ohio-1569, ¶ 49.

{¶72} The Supreme Court of Ohio noted the following in *In re C.F.*, 113 Ohio St.3d 73, 78, 862 N.E.2d 816 (2007):

> [N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151.413(D) - the '12 months out of 22 rule' '[i]f reasonable efforts to return the child to the child's home are required under section 2151.419 and the agency has not provided the services required by the case plan.

{¶73} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety are

paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378

**{¶74}** Further, the Agency points out that R.C. §2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.414. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 43. Although the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights, it may establish that reasonable efforts have been made prior to the hearing on a motion for permanent custody. *Id.*

**{¶75}** In the instant case, the trial court made findings of reasonable efforts on seven occasions prior to the permanent custody hearing, specifically, May 20, 2021, July 13, 2021, November 16, 2021, April 15, 2022, May 18, 2022, October 14, 2022, and May 26, 2023. Appellant-Father never objected to any of the magistrate's seven findings of best efforts, and the trial court was not required to make a best efforts determination at the permanent custody hearing.

**{¶76}** Notwithstanding the trial court's previous findings of reasonable efforts, we find that Appellee also established at the hearing that its case planning and efforts were reasonable and diligent under the circumstances of the case. *See, In re J.D.*, *supra*, 2011-Ohio-1458.

**{¶77}** We find there is competent and credible evidence to support the juvenile court's determination the efforts of the Agency to reunite the children with Appellant-Father were reasonable and diligent under the circumstances of the case

**{¶78}** Appellant-Father's second assignment of error is overruled.

**III., IV.**

**{¶79}** In his third and fourth assignments of error, Appellant argues SCJFS' case plan was not guided by the general priorities enumerated in R.C. §2151.412(h) and that the grant of permanent custody of D.B. to SCJFS violated his right to due process. We disagree.

**{¶80}** Specifically, Appellant-Father argues that R.C. §2151.412(H)(2) creates a statutory preference or priority that a child be placed with a relative when possible and that therefore the maternal aunt should have been granted legal custody of D.B.

**{¶81}** R.C. §2151.412(H) states, in relevant part, as follows:

In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:

* * *

(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family.

**{¶82}** R.C. §2151.412(H)(2) instructs a juvenile court to prioritize placing a child in the legal custody of "a suitable member of the child's extended family" when developing and reviewing a case plan, but "there is no such requirement in permanent custody determinations." *In re Tr.T.*, 8th Dist. No. 106107, 2018-Ohio-2126, ¶ 17, citing *In re J.F.*,

8th Dist. No. 105504, 2018-Ohio-96, ¶ 41, 102 N.E.3d 1264. *See also In re A.S.*, 4th Dist. No. 16CA878, 2017-Ohio-1166, ¶ 59; *In re J.A.*, 9th Dist. No. 24134, 2008-Ohio-3635, ¶ 26.

**{¶83}** Therefore, R.C. §2151.412(H)(2) is inapplicable here, when the question before the trial court was whether permanent custody was in the children's best interests.

**{¶84}** Moreover, even if it were applicable, the "priority" established under R.C. §2151.412(H)(2) provides "only discretionary guidance and is not mandatory." *J.A.* at ¶ 25. *See also In re Halstead*, 7th Dist. No. 04 CO 37, 2005-Ohio-403, ¶ 39. The language of [R.C. 2151.412(G)] is precatory rather than mandatory. *Matter of Rollinson*, 5th Dist. Stark No. 97 CA 00206, 1998 WL 517866; S*ee, In Re: Hiatt* (1983), 86 Ohio App.3d 716, 621 N.E.2d 1222; *In Re: Dixon* (Nov. 29, 1991), Lucas App. No. L-91-021, unreported; *In Re: Cundiff* (Nov. 20, 1995), Stark App. No.1995 CA 00102, unreported. Consequently, this statute does not require the trial court to act in a specific manner, but rather suggests criteria to be considered in making its decision regarding case plan goals. *Dixon, supra. In re M.O.*, 4th Dist. Ross No. 10CA3189, 2011-Ohio-2011, ¶ 15.; *In re T.P.*, 3rd Dist. Hancock No. 5-21-36, 2022-Ohio-2995, ¶ 26. (the language of this statute is precatory, not mandatory as is shown by the use of the word "should" instead of "shall").

**{¶85}** In *Schaefer*, 2006-Ohio-5513, 111 Ohio St.3d 498, 857 N.E.2d 532, the Supreme Court of Ohio reviewed a juvenile court's determination that it was in the best interest of a child to grant permanent custody to a children services agency so the child could continue in his current foster home. The Supreme Court held that the juvenile court satisfied its statutory duty by considering the factors set out in R.C. §2151.414(D)(1) and stated, R.C. §2151.414 "does not make the availability of a placement that would not

require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.* at ¶ 64. Indeed, if an award of permanent custody to the agency is in the child's best interest, as determined by application of the factors in R.C. §2151.414(D), a grant of legal custody to a relative is necessarily *not* in the child's best interest. *In re T.H.*, 8th Dist. No. 107947, 2019-Ohio-3045, ¶ 13.

{¶86} Ohio appellate courts have similarly rejected arguments that a juvenile court errs by granting permanent custody of a child to an agency without first determining whether there is a relative suitable for placement. *See In re L.W.*, 8th Dist. No. 104881, 2017-Ohio-657, ¶ 22; *In re O.D.L.*, 2d Dist. No. 28865, 2021-Ohio-79, ¶ 16 ("awarding permanent custody to [an agency] without investigating all possible relatives for placement, standing alone, is not reversible error"); *In re A.C.H.*, 4th Dist. No. 11CA2, 2011-Ohio-5595, ¶ 44 ("the trial court had no duty to first consider placing the children with appellant's relatives before granting [the agency] permanent custody"). Even when a potential relative has been identified, "[a] juvenile court need *not* find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting an agency's motion for permanent custody." (Emphasis sic.) *In re C.H.*, 8th Dist. No. 103171, 2016-Ohio-26, ¶ 26, citing *In re B.D.*, 4th Dist. No. 08CA3016, 2008-Ohio-6273, ¶ 29. *See also In re A.B.*, 12th Dist. No. CA2013-03-024, 2013-Ohio-3405, ¶ 34, citing *In re Patterson*, 134 Ohio App.3d 119, 130, 730 N.E.2d 439 (9th Dist.1999). "No preference exists for family members, other than parents, in custody awards." *C.H.* at ¶ 27, citing *In re M.W.*, 8th Dist. No. 96817, 2011-Ohio-6444, ¶ 27, citing *In re Patterson*, 1st Dist. No. C-090311, 2010-Ohio-766, ¶ 16.

**{¶87}** We also note that neither the maternal aunt nor any other family member filed a motion for legal custody of the children in this case.

**{¶88}** R.C. §2151.353(A) sets out the types of dispositional orders a trial court may make after a child is adjudicated an abused, neglected, or dependent child. Pursuant to R.C. §2151.353(A)(3), the court may "[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

**{¶89}** Inasmuch as she did not file a motion requesting legal custody of the children and was not identified as a proposed legal custodian by a party in a complaint or motion filed prior to the dispositional hearing, the juvenile court lacked authority to award legal custody to the maternal aunt. *See In re L.B.,* 9th Dist. No. 20CA0008-M, 2020-Ohio-3834, ¶ 19; *Matter of N.S.,* 10th Dist. Franklin No. 23AP-151, 2023-Ohio-4285, ¶¶ 36-42.

**{¶90}** Appellant-Father's third and fourth assignments of error are overruled.

**{¶91}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.
Hoffman, P. J., and
King, J., concur.

JWW/kw 0201