[Cite as *In re G.S.*, 2024-Ohio-2316.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: G.S. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| | : | |
| | : | Case No. 24CA07 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court
of Common Pleas, Juvenile Division,
Case No. 2022 AB 45

JUDGMENT:                                    AFFIRMED

DATE OF JUDGMENT ENTRY:       June 17, 2024

APPEARANCES:

For Appellee FCCPS:                         For Mother G.S.:

R. KYLE WITT                                  DAVID A. TAWNEY
FAIRFIELD CO. PROSECUTOR          117 West Main St., Suite 210-B
GENYLYNN COSGROVE                   Lancaster, OH 43130
239 West Main St., Suite 101
Lancaster, OH 43130


GUARDIAN AD LITEM:
ROSSIA MERANDA
729 South Third St.
Columbus, OH 43206

*Delaney, P.J.*

{¶1} Appellant Mother appeals from the February 6, 2024 "Judgment Entry/Orders on Objection to Magistrate's Decision" of the Fairfield County Court of Common Pleas, Juvenile Division, granting permanent custody of minor child G.S. (dob 5/6/2021) to appellee Fairfield County Child Protective Services ("Agency").

## FACTS AND PROCEDURAL HISTORY

{¶2} Mother is the biological mother of Child; the biological father is unknown. In March 2022, Child was placed in the Agency's emergency ex parte custody, then temporary shelter custody. Child was found to be dependent.

{¶3} Review hearings were held in September and December 2022, and in February, July, and September 2023. An annual review hearing was held on February 23, 2023, and temporary custody was extended on February 23, 2023, and on September 1, 2023.

{¶4} On January 31, 2023, the Agency filed a motion requesting that temporary custody of the Child be amended to an order of permanent custody. Pretrials were held on April 26 and May 10, 2023. On July 14, 2023, the Agency moved to dismiss the motion for permanent custody because Mother was making progress on her case plan. The motion was granted by the trial court.

{¶5} On September 1, 2023, the Agency filed a new motion requesting permanent custody. A pretrial hearing was held on October 30, 2023, and an evidentiary hearing was held on November 20, 2023.

{¶6} The following evidence is adduced from the record of the November 20, 2023 hearing. The parties agreed to stipulated findings of fact, including admission of Averhealth drug screen results/records.

{¶7} A Guardian Ad Litem (GAL) was appointed for Child and filed a final written report. The GAL recommended granting permanent custody to the Agency.

{¶8} Initial concerns that led to Agency involvement included Mother taking medications that caused her to fall asleep while taking care of Child; co-sleeping issues; Mother's substance abuse and erratic behavior including yelling, combativeness, and inability to remember events; Mother falling asleep mid-sentence while in conversation with the Agency while Child was crawling on the bed; Mother's admitted use of non-prescribed Percocets and methamphetamine relapse; and Mother's threats to leave the state while observed with a packed suitcase.

{¶9} The Agency developed a reasonable case plan and exerted diligent efforts to assist Mother in remedying the problems that led to Child being removed from the home. Mother signed and agreed with the case plan, and agreed the case plan was reasonable. The case plan required Mother to work with her physician and psychiatrist to stabilize her behaviors and build appropriate coping skills to handle stressors, including medication stability; submit to a drug and alcohol assessment and follow all recommendations; submit to a mental health evaluation and follow all recommendations; demonstrate sobriety through alcohol and drug screens; maintain regular contact with the Agency and sign releases for all providers; and establish reliable and consistent housing.

{¶10} Regarding stabilization of medication, building coping skills, treatment of drug and alcohol abuse and mental health concerns, Mother did not engage in services from the date of removal (March 4, 2022) through hospitalization in late January 2023.

{¶11} Upon release from the hospital in early 2023, Mother was transferred to Maryhaven, a residential treatment center. She engaged in in-patient treatment at Maryhaven and was transitioned to Lowerlights, a step-down program. On August 8, 2023, Mother was asked to leave Lowerlights due to struggles with other residents and an inability to be redirected by staff. Mother struggled with peer confrontations.

{¶12} Upon discharge from Lowerlights, Mother had a gap in service of several weeks until she could obtain appointments with new providers. Mother admitted relapsing on the date she was discharged from Lowerlights and was arrested for having substances and/or paraphernalia in her possession while living in a car.

{¶13} As of the date of the permanent custody hearing, Mother had recently been indicted on charges arising from that arrest.

{¶14} Mother indicated she is working with New Horizons regarding her psychiatric needs, but Mother has not sufficiently complied with this aspect of the case plan because she cannot manage her reactions to stressors and was discharged from Lowerlights due to this inability. Since discharge, she has tested positive for substances or failed to test altogether. Mother has been engaged in services since January 2023, but most of her compliance occurred during placement in an in-patient facility. Mother has not shown a change in behavior based on what she learned in treatment.

{¶15} The parties stipulated to records from Averhealth regarding screening for drugs and alcohol. Mother tested positive for methamphetamines on August 11, August

17, August 18, and October 6, 2023. Mother missed screens on August 25, September 7, September 21, September 27, October 5, and October 13, 2023. Mother has not complied with this aspect of the case plan.

{¶16} Mother did maintain contact with the Agency since engaging in services in January 2023. Mother complied with this aspect of the case plan.

{¶17} Regarding housing, Mother testified she lived with a roommate on Harrison Avenue in Lancaster for approximately six months. She was in either a hospital or an in-patient facility from January 2023 until August 8, 2023. Upon discharge from Lowerlights, Mother lived with a friend in a car, then stayed at a friend's house in Bremen for several weeks, then in Delaware at the home of someone she met on Facebook. Caseworkers met her at the Delaware residence on September 5, 2023. Mother then began staying with someone named Gary in September 2023. She testified at the hearing that she had recently learned she would be able to continue to stay with Gary, per the owner of the home. Mother has not complied with the "stable housing" aspect of her case plan.

{¶18} Mother has engaged in consistent visitation with the Child. While she was in treatment, Mother was allowed several hours of unsupervised visitation, but upon her unsuccessful discharge from Lowerlights and positive drug screens, visitation returned to supervised.

{¶19} Mother is bonded with Child and they love each other. However, the GAL noted their interaction is very "childlike," as though they are two little kids playing together. As noted supra, the GAL recommended permanent custody to the Agency.

{¶20} Child is in a foster placement, where he has been since January 2023. The Agency spoke with Mother about kinship placements, but none were willing or able to provide for Child.

{¶21} On December 1, 2023, a magistrate granted the Agency's motion for permanent custody. Mother objected and the trial court affirmed the magistrate's decision on February 6, 2024.

{¶22} Mother now appeals from the trial court's Judgment Entry/Orders on Objection to Magistrate's Decision.

{¶23} Mother raises two assignments of error:

## ASSIGNMENTS OF ERROR

{¶24} "I. THE TRIAL COURT ERRED IN FINDING THAT THE MINOR CHILD COULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE LENGTH OF TIME."

{¶25} "II. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE TO GRANT THE MOTION FOR PERMANENT CUSTODY."

## ANALYSIS

### I., II.

{¶26} Mother's two assignments of error are related and will be addressed together. She argues the trial court should not have granted the motion for permanent custody because she needed more time to work on her sobriety. We disagree.

{¶27} "[T]he right to raise a child is an 'essential' and 'basic' civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be

based on clear and convincing evidence. R.C. § 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶28} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159.

*Requirements for Permanent Custody Awards*

{¶29} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶30} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one

or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division D(1) of section 2151.413 of the Revised Code, the child was previously in the temporary agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected or dependent child on three separate occasions by any court in this state or another state.

{¶31} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the circumstances delineated in R.C. 2151.414(B)(1) is present before proceeding to a determination regarding the best interest of the child.

*R.C. 2151.414(B)(1)(d)*

{¶32} In the instant case, the trial court concluded that R.C. 2151.414(B)(1)(d) applies to Child, to wit, the child was in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period. Child was placed in the temporary custody of the Agency on March 7, 2022, and the permanent custody motion was filed on September 1, 2023. We find the trial court's judgment on this point is supported by competent, credible evidence. *Schiebel*, supra, 55 Ohio St.3d at 74.

{¶33} Mother does not challenge the trial court's finding pursuant to R.C. 2151.414(B)(1)(d). This Court has adopted the position that proof of temporary custody

with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *Matter of O.M.*, 5th Dist. Coshocton No. 20CA0017, 2021-Ohio-1310, 2021 WL 1424200, ¶ 33, citing *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *In re G.H.*, 5th Dist. Licking No. 2022 CA 00026, 2022-Ohio-4496, ¶ 51, citing *Matter of L.G.*, 5th Dist. Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

*Best Interests*

{¶34} Mother argues the trial court's decision is not in the best interests of Child. R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶35} The juvenile court has considerable discretion in weighing these factors. *In re D.A.*, supra at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *Id.* at ¶ 64.

{¶36} Mother argues the trial court should have prioritized reunification because she did demonstrate, at times, that she was able to remain sober. Mother argues she should have been given additional time to work on her case plan because her biggest problem is sobriety, which is a lifetime challenge. We note Mother was given additional time when the first motion for permanent custody was dismissed on July 14, 2023, because Mother was making progress with her sobriety,  However, less than a month

later, she was asked to leave her treatment program because she had "struggles" with other residents. Moreover, Mother's intermittent sobriety was only one aspect of non-compliance with her case plan, and she overlooks the others.

{¶37} A child is entitled to a legally permanent, secure placement, and Mother's sobriety issues established she could not provide this. No single statutory factor is given greater weight or heightened significance. *Matter of K.B.*, 5th Dist. Stark No. 2023 CA 00072, 2024-Ohio-491, ¶ 61, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57. We review a trial court's best interest determination under R.C. 2151.414(D) for an abuse of discretion. *In re G.B.*, 5th Dist. Stark No. 2023CA00120, 2023-Ohio-4757, ¶ 11, citing *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. A trial court's failure to base its decision on a consideration of the best interest of the child constitutes an abuse of discretion. *G.B.,* supra, citing *In re R.S.*, 8th Dist. Cuyahoga No. 111353, 2022-Ohio-4387, ¶ 45 (Citation omitted). An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶38} Although Mother cites her only issue as sobriety, we note she did not engage in mental health services for 9 months after Child's removal. She was hospitalized in January 2023 and subsequently transferred to Maryhaven for inpatient treatment, which spurred her to engage in services for substance abuse treatment. Ultimately, though, she was terminated and asked to leave Lowerlights due to her inability to be redirected, struggles with other residents, and peer confrontations. Upon discharge, Mother relapsed with illegal drugs and did not receive mental health treatment. She was

arrested for drug possession while living in a car, missed drug screens, and repeatedly tested positive for methamphetamine as recently as 3 months before the permanent custody hearing. She failed to maintain stable housing. The trial court found Mother's failures to comply with critical parts of the case plan were compelling reasons why permanent custody to the Agency was in Child's best interest, and we agree.

{¶39} Upon hearing all of the evidence and considering the witnesses' testimony, the trial court found permanent custody to the Agency to be in Child's best interests and we find no abuse of discretion. A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re A.R.*, 5th Dist. Stark No. 2022CA00148, 2023-Ohio-1359, ¶ 51, citing *In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, ¶ 101, internal citations omitted.

{¶40} The trial court found reunification with Mother was not in Child's best interest. Any harm caused by severing any bond with Mother is outweighed by the benefits of permanence for the child. See, *Matter of W.W.,* 5th Dist. Licking No. 2023 CA 00057, 2023-Ohio-4112, ¶ 30.

{¶41} The evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. *Matter of A.G.*, 5th Dist. Fairfield No. 18-CA-51, 2019-Ohio-1786, ¶ 49. The trial court found that, regardless of Mother's compliance with aspects of the case plan, she was still not able to

be a successful parent to Child. *Id.* In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time. *Id.,* at ¶ 50. Based upon the foregoing, as well as the entire record in this case, the trial properly found Child could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable to mitigate the concerns that led to the children's removal.

{¶42} Upon review, we find sufficient clear and convincing evidence to support the trial court's decision to grant the Agency's motion for permanent custody, and do not find any manifest miscarriage of justice. We further find there is competent, credible evidence to support the juvenile court's decision that it was in the best interest of the child to be placed in the permanent custody of the Agency, and that decision is not an abuse of the trial court's discretion. See, *Matter of C.T.*, 5th Dist. Stark No. 2023CA00119, 2024-Ohio-212, ¶ 43.

## CONCLUSION

{¶43} Mother's two assignments of error are overruled and the judgment of the Fairfield County Court of Common Pleas, Juvenile Division is affirmed

By: Delaney, P.J.,

Gwin, J. and

Hoffman, J., concur.