[Cite as *In re T.P.*, 2022-Ohio-2995.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

T.P.,

CASE NO. 5-21-36

ABUSED, NEGLECTED AND
DEPENDENT CHILD.

O P I N I O N

[FAITH P. - APPELLANT]

---

IN RE:

G.P.,

CASE NO. 5-21-37

NEGLECTED AND DEPENDENT CHILD.

O P I N I O N

[FAITH P. - APPELLANT]

---

Appeals from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 20203021 AND 20203022

Judgments Affirmed

Date of Decision:  August 29, 2022

---

APPEARANCES:

*Linda Gabriele* for Appellant

*Justin Kahle* for Appellee

**WILLAMOWSKI, J.**

{¶1} Mother-appellant, Faith P. ("Faith"), appeals the December 8, 2021 decisions of the Hancock County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, G.P. and T.P., to the Hancock County Job and Family Services (the "agency"). On appeal Faith claims that 1) the judgment was against the manifest weight of the evidence; 2) the judgment was not in the children's best interest; 3) her due process rights were violated; and 4) that the agency did not make reasonable efforts to find a relative placement. For the reasons that follow, we affirm.

{¶2} G.P., born in June 2013, and T.P., born in May 2018, are the minor child of Faith and Spencer P. ("Spencer").[1] ADoc. 1 and BDoc 1.[2] On March 2, 2020, Faith contacted the Findlay Police Department to report that she discovered bruises on T.P.'s face and body after she left T.P. in the care of her boyfriend, D.S., on March 1-2, 2020. ADoc. 1 and BDoc 1. The department contacted the agency to come pick up G.P. as T.P. was being taken to the hospital and Faith was to be arrested upon an outstanding warrant. ADoc. 1 and BDoc 1. The caseworker was able to place G.P. with James R. ("James"), her maternal grandfather, at that time. ADoc. 1 and BDoc. 1. T.P. was diagnosed with a radial buckle/break of her left wrist and a small brain bleed on her right side. ADoc. 1 and BDoc. 1. T.P. was then

---

[1] Even though Spencer appeared in the cases, Spencer failed to appear at the permanent-custody hearing.
[2] The record for T.P. is identified at ADoc. The record for G.P. is identified as BDoc.

taken to Toledo Children's Hospital for further tests and treatment. ADoc. 1 and BDoc. 1. Upon her release, she was placed with James as well. Tr. 93.

{¶3} On March 3, 2020, the agency filed complaints alleging G.P. to be a neglected and dependent child and T.P. to be an abused, neglected, and dependent child. ADoc. 1 and BDoc. 1. Following a probable-cause hearing, the trial court concluded that probable cause existed to believe that G.P. was a neglected and dependent child and that T.P. was an abused, neglected, and dependent child. ADoc. 8 and BDoc. 7. The trial court found that the agency had made reasonable efforts to avoid removing the children from their home but it was in their best interest to be placed in the temporary custody of the agency. ADoc. 8 and BDoc. 7. On March 10, 2020, James contacted the Agency and told them that he could not keep T.P. because she had too many follow up medical appointments at that time and he was unable to miss that much work and keep his job. Tr. 93. On March 14, 2020, the children were placed with their paternal aunt and uncle. Tr. 94-95. The agency filed a case plan for the children on April 6, 2020. ADoc. 18 and BDoc. 16. The plan called for Faith to 1) participate in a domestic violence victim program and 2) complete a substance abuse/mental health assessment and follow the treatment recommendations.[3] ADoc. 18 and BDoc. 16.

---

[3] Although services were offered to Spencer, we will not be discussing his requirements as he agreed to permanent custody and is not appealing the trial court's judgment. A review of the record shows that Spencer made no progress on his requirements before asking to be removed from the case plan.

{¶4} An adjudication hearing was held on May 21, 2020. ADoc. 25 and BDoc. 23. The trial court found by clear and convincing evidence that T.P. was an abused, neglected, and dependent child and that G.P. was a neglected and dependent child. ADoc. 25 and BDoc. 23. The trial court immediately proceeded to disposition and ordered that the children remain in the temporary custody of the agency. ADoc. 25 and BDoc. 23. On August 5, 2020, the agency filed an amended case plan. ADoc. 33 and BDoc. 30. The new case plan required Faith to 1) complete parenting classes; 2) visit with the children regularly; 3) complete a domestic violence victim program; and 4) complete a substance abuse/mental health assessment and follow treatment recommendations. ADoc. 33 and BDoc. 30.

{¶5} In early June, the paternal aunt and uncle learned that he had cancer and notified the Agency that they would no longer be able to keep the children. Tr. 96. The Agency placed the children with a foster family on June 17, 2020. Tr. 97. On June 24, 2020, James filed motions to intervene in the cases. ADoc. 26 and BDoc. 25. On September 10, 2020, Spencer filed memoranda in opposition to James' motions to intervene in the cases. ADoc. 35 and BDoc. 33. James filed motions for legal custody or rights of companionship and visitation on October 28, 2020. ADoc. 37 and BDoc. 36. Following a hearing, the trial court granted James's motions to intervene in the cases. ADoc. 39 and BDoc. 38.

{¶6} On January 21, 2021, the agency filed a semi-annual review of the case plan. ADoc. 53 and BDoc. 47. The review noted that Faith had only attended one session in the domestic violence victims group, but had failed to attend any other sessions. ADoc. 53 and BDoc. 47. Faith had completed her substance abuse/mental health issues assessment and had been identified as having an issue with opiates. ADoc. 53 and BDoc. 47. Although Faith was engaged in services, she had been advised to complete in-patient treatment and had not done so. ADoc. 53 and BDoc. 47. At that time Faith was attending her visitation with the children and the agency noted that she was making some progress. ADoc. 53 and BDoc. 47.

{¶7} The agency filed an approved home study of James' home on February 5, 2021. ADoc. 58 and BDoc. 53. A hearing on James' motion for legal custody or unsupervised visitation was held on January 4, 2021. ADoc. 59 and BDoc. 54. Following the hearing, the trial court denied the motion for legal custody and the motion for unsupervised visitation. ADoc. 59 and BDoc. 54.

{¶8} On July 12, 2021, the agency filed another semi-annual review of the case plan. ADoc. 61 and BDoc. 56. In the review it was noted that Faith was now in need of safe, stable and drug-free housing as she was temporarily living with James. ADoc. 61 and BDoc. 56. The agency noted that although Faith had attempted to complete parenting classes, she had not successfully completed the classes. ADoc. 61 and BDoc. 56. Faith also was on probation through Ottawa County at that time after being discharged from probation in Hancock County due

to her non-compliance and a lack of motivation. ADoc. 61 and BDoc. 56. Faith also had not successfully completed her domestic violence classes and would need to restart the program due to lack of attendance. ADoc. 61 and BDoc. 56. The agency did note that Faith had made some progress in her drug treatment program due to her completing a program at the WORTH Center and also was continuing to keep contact with the children, even while incarcerated. ADoc. 61 and BDoc. 56 Overall the agency determined that neither Faith nor James had made sufficient progress on their case plan services to allow the children to be placed with either of them. ADoc. 61 and BDoc. 56.

{¶9} On August 24, 2021, the agency filed motions for permanent custody of G.P. and T.P. ADoc. 63 and BDoc. 58. The basis for the agency's motions was that 1) the children could not be placed with Faith or Spencer within a reasonable time, 2) the children had been in the temporary custody of the agency for more than twelve out of a consecutive twenty-two month period, and 3) the children were abandoned. ADoc. 63 and BDoc. 58. On November 4, 2021, the trial court entered a finding that the agency had "made reasonable efforts to finalize a permanency plan" for the children. ADoc. 86 and BDoc. 79. A new GAL filed his report and recommendation on November 10, 2021. ADoc. 87 and BDoc. 81. The GAL noted that the children visited and had phone calls with James, while receiving phone calls from Faith. ADoc. 87 and BDoc. 81. He noted that the children entered foster care from relative placements on June 15, 2020. ADoc. 87 and BDoc. 81. The GAL

stated that he attempted to arrange a visit with Faith at the Ohio Reformatory for Women, where she was currently incarcerated, but no visit had occurred at that time. ADoc. 87 and BDoc. 81. Throughout the case plan, Faith had been incarcerated multiple times. ADoc. 87 and BDoc. 81. The GAL stated that James had completed the mental health assessment, but did not follow the recommendations. ADoc. 87 and BDoc. 81. The GAL noted that the children "have a great relationship with their grandfather" and it would be in their best interest for them to continue the relationship through visitation. ADoc. 87 and BDoc. 81. He reported that the foster family invited James to the children's soccer games and birthday parties. Finally, the GAL recommended that the trial court grant the agency's motion for permanent custody, but order that James continue with visitation while Faith's contact be terminated. ADoc. 87 and BDoc. 81.

{¶10} James filed new motions for legal custody on November 22, 2021. ADoc. 91 and BDoc. 84. On November 30, 2021, Faith filed a motion to be conveyed to the hearing. ADoc. 94 and BDoc. 87. The motion to convey was denied. ADoc. 95 and BDoc. 82. On December 2, 2021, Teresa R. ("Teresa"), the children's maternal great-grandmother, filed motions for legal custody. ADoc. 96 and BDoc. 89.

{¶11} On December 6 and 7, 2021, a hearing was held on the motions filed by the agency, James, and Teresa. ADoc. 102 and BDoc. 95. At the beginning of the hearing, Spencer indicated, through his attorney, that he agreed with the

Agency's motion for permanent custody and stipulated such. Tr. 9. Counsel for Faith objected to her not being allowed to attend the hearing in person, instead only via audio. Tr. 14. The trial court overruled the objection. Tr. 14. Following the hearing, the trial court granted the Agency's motion for permanent custody. ADoc. 102 and BDoc. 95. Faith filed her notices of appeal on December 15, 2021 and amended notices of appeal on December 21, 2021.[4] ADoc. 105, 113 and BDoc. 98, 106. She raises four assignments of error on appeal.

## First Assignment of Error

**The Juvenile Court's Decision is Against the Manifest Weight of the Evidence as the Agency Did Not Prove By Clear and Convincing Evidence That it Should Be Granted Permanent Custody of the Children.**

## Second Assignment of Error

**The Juvenile Court Abused its Discretion in Finding That Permanent Custody to the Agency Was in the Minor Children's Best Interest.**

## Third Assignment of Error

**Denial of Mother-Appellant's Motion to Appear in Person Violated Her Right to Due Process Under the US and Ohio Constitutions.**

## Fourth Assignment of Error

**The State Did Not Make Reasonable Efforts To Facilitate a Relative Placement For the Children.**

---

[4] Spencer did not file a notice of appeal.

*Granting of Agency's Motion for Permanent Custody*

**{¶12}** In her first and second assignments of error Faith argues that the trial court erred by granting permanent custody of T.P. and G.P. to the agency. Specifically, Faith argues under her first assignment of error that the trial court's decision granting permanent custody of T.P. and G.P. to the agency is against the manifest weight of the evidence. Faith then argues in the second assignment of error that the trial court's decision was not in the best interest of the children.

**{¶13}** The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 3d Dist. No. 5–02–52, 5–02–53, 5–02–54, 2003–Ohio– 1269, ¶ 6. These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows.

> **(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**

**(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, \* \* \* and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.**

**\* \* \***

**(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period \* \* \*.**

**\* \* \***

**For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from the home.**

**\* \* \***

**(C) In making the determination required by this section \* \* \*, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section \* \* \* but shall not be submitted under oath.**

**If the court grants permanent custody of a child to a movant under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding. The court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan.**

R.C. 2151.414. A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established. *In re S.L.*, 3d Dist. Shelby Nos. 17-17-17, 17-17-18, 17-17-19, 2018-Ohio-900, ¶ 24.

{¶14} The determination whether to grant a motion for permanent custody requires a two-step approach. *In re L.W.*, 3d Dist. Marion Nos. 9-16-55, 9-16-56, 2017-Ohio-4352, ¶ 5. The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶15} A review of the record in this case shows that the children were removed from the home on March 3, 2020, and placed with family members. Tr. 93. On June 17, 2020, the children were moved to a foster placement. Tr. 97. The children remained in foster care from that time forward. Tr. 97. The Agency filed its motion for permanent custody on August 24, 2021. Thus, the children spent more than 12 months out of the preceding 22 months in the custody of the Agency. This meets the requirement of R.C. 2151.414(B)(1)(d).

{¶16} "Once a trial court has determined that one of the enumerated provisions in R.C. 2151.414(B)(1) applies, it then must determine by clear and

convincing evidence whether granting the agency permanent custody of the child is in the child's best interest." *In re A.N.*, 3d Dist. Marion No. 9-19-79, 2020-Ohio-3322, ¶ 5.

> **(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section \* \* \* the court shall consider all relevant factors, including, but not limited to, the following.**
>
> **(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**
>
> **(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**
>
> **(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies \* \* \* for twelve or more months of a consecutive twenty-two month period \* \* \*.**
>
> **(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.**
>
> **(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

R.C. 2151.414. A trial court must either specifically address each of the required factors or otherwise provide some affirmative indication that it considered the listed factors. *A.N. supra.*

{¶17} Here, the trial court specifically addressed the statutory factors. As to the first factor, the interactions and interrelationships of the children, the trial court found that the children had been out of the home since March 2, 2020 and had been moved multiple times through no fault of their own. ADoc. 102 and BDoc. 95. The trial court noted that both of the children were thriving in the current placement. ADoc. 102 and BDoc. 95. The trial court noted that the children were bonded to Faith, James, and Teresa as well as the foster family. ADoc. 102 and BDoc. 95. Because of this, the trial court found that this factor supported both granting and denying the motion for permanent custody.

{¶18} The second factor is the wishes of the child, expressed either directly or through the GAL. The GAL testified that T.P. indicated she wanted to live with the foster family. ADoc. 102. G.P. told the GAL that she wanted to live with the foster family. BDoc. 95. However, the trial court noted that the foster mother testified that G.P. had told her that G.P. wished to live with James. BDoc. 95. The trial court concluded that this factor weighed in favor of granting permanent custody to the agency. ADoc. 102 and BDoc. 95.

{¶19} The third factor addresses the custodial history of the children and whether they have been in the Agency's custody for at least 12 out of a consecutive 22 month period. As noted above, the children had been in the temporary custody of the Agency for more than 12 out of a consecutive 22 month period prior to the filing of the motion for permanent custody. The trial court determined that this

factor weighed in favor of granting the Agency's motion for permanent custody. ADoc. 102 and BDoc. 95.

**{¶20}** The fourth factor addresses the children's need for legally secure and permanent placements and how this could be achieved. The trial court noted that Karmen Lauth ("Lauth"), the case plan supervisor, testified that the children were in need of a legally secure and permanent placement and that the placement could not be achieved without terminating the parental rights of Faith and Spencer. ADoc. 102 and BDoc. 95. The trial court agreed with the determination and found that Faith was not in a position to care for the children. ADoc. 102 and BDoc. 95. The trial court then determined that termination of Faith's parental rights was in the best interests of the children. ADoc. 102 and BDoc. 95.

**{¶21}** A review of the record shows that all of the findings of the trial court were supported by the record. Keshia Olague testified that she reviewed the visitations and noted that the children appeared bonded with James and Teresa. Tammy Alvarado ("Alvarado") testified that as the case worker, she had no issues with either Faith's or James' visits with the children as they went well. Tr. 111-12. Lauth testified that the children were attached to Faith. Tr. 149. The foster mother testified that the children get very excited about visiting with Faith, James, and Teresa. Tr. 200-202. The children come out of the visits happy and they look forward to seeing them. Tr. 200-202. She specifically noted that the interactions with James and Teresa are very important to both children. Tr. 214. The GAL

testified that the children have a great relationship with James and he recommended the relationship continue even after parental rights were terminated. Tr. 200-21. This testimony supports the trial court's conclusions about the interrelationship.

{¶22} Additionally, there was testimony about the other factors as well. The GAL specifically testified as to what the children had indicated was their preference for where they lived. Tr. 218. The foster mother testified that GP had said she wanted to live with James. Tr. 213. Lauth testified about the children's need for a permanent placement. Tr. 159-161. The custodial history of the children was set forth in the record for the trial court to review. Given the evidence before it, the trial court could determine that the evidence clearly and convincingly showed that the granting of the motion for permanent custody was in the children's bests interests.

{¶23} As there was clear and convincing evidence that one of the factors under R.C. 2151.414(B)(1) was present, the trial court did not err in finding such. Additionally, there was clear and convincing evidence that the granting of the Agency's motion for permanent custody was in the best interest of the children. The first and second assignments of error are overruled.

*Right to Appear at the Hearing*

{¶24} In the third assignment of error, Faith claims that the trial court erred in denying her request to be transported to the hearing from prison. Generally, parents of a child have a constitutionally protected right to be present at a permanent

-15-

custody hearing, but this right is not absolute if the parent is incarcerated. *In re A.W.,* 3d Dist. Defiance Nos. 4-16-23, 4-16-24, and 4-16-25, 2017-Ohio-1486, ¶ 15. "[T]he failure to transport a parent from prison to a permanent custody hearing does not violate a parent's due process rights when: 1) the parent is represented at the hearing by counsel; 2) a full record of the hearing is made; and 3) any testimony that the parent wishes to present is able to be presented by deposition or by other means." *Id.* The decision whether to transport an incarcerated parent to the permanent custody hearing is left to the discretion of the trial court. *Id.* at ¶ 16.

**{¶25}** Here, Faith was incarcerated at the time of the hearing and filed a motion to be transported to the hearing. The trial court denied the motion, so she was not physically present at the hearing. However, she was represented by counsel during the hearing, a full record of the hearing was made, and she was offered the opportunity to present testimony. Additionally, while Faith was not physically present for the hearing, she was able to participate electronically for most of the hearing by phone and by zoom. Her counsel cross-examined all of the witnesses and was offered the opportunity to present testimony. When the trial court asked Faith's counsel if he intended to call any witnesses, counsel responded "I did not." Tr. 225. Given that Faith was able to participate electronically in the majority of the hearing, was represented by counsel, chose not to testify when given the opportunity, and a full record of the hearing was made, her due process rights were

-16-

not violated. As such, the trial court did not abuse its discretion in denying Faith's motion to transport her to the hearing. The third assignment of error is overruled.

*Relative Placement*

**{¶26}** In her final assignment of error, Faith claims that the Agency failed to make reasonable efforts to place the children with a relative. Faith argues that if the trial court determined that the children could not be placed in her legal custody, the trial court should have awarded legal custody of the children to James.[5] In support of her argument, Faith refers to R.C. 2151.412(H)(2), which states that if the parents cannot care for a child, the case plan should place the child in the legal custody of the child's extended family. However, the language of this statute is precatory, not mandatory as is shown by the use of the word "should" instead of "shall". *In re M.O.*, 4th Dist. Ross No. 10CA3189, 2011-Ohio-2011, ¶ 15.

> **[T]his statute does not command the juvenile court to act in a specific manner. Instead, it sets out general, discretionary priorities to guide the court. So while the guidelines may be helpful to the juvenile court, it is not obligated to follow them. Therefore, the juvenile court's judgment is not in error simply because the court chose not to follow one of these suggested guidelines.**

*In re Halstead*, 7th Dist. Columbiana No. 04 CO 37, 2005 -Ohio- 403, ¶ 39 (discussing prior version of the statute with almost identical language). "Moreover, this legislation is relevant to case planning efforts during the temporary placement

---

[5] Teresa also filed a motion for legal custody, but scant evidence was presented on her motion at trial and Faith does not present any arguments on that motion, so we will focus on James' motion for legal custody.

-17-

of a child in the midst of a custodial proceeding as opposed to a determination on the best interests of that child at the conclusion of a permanent custody proceeding." *In re J.A.*, 9[th] Dist. Summit No. 24134, 2008-Ohio-3635, ¶ 26.

**{¶27}** The evidence in this case does show that James and the children were very bonded with each other. The GAL even recommended that it would be in the best interest of the children to continue contact with their grandfather. By all accounts, James was a wonderful grandfather whose interaction with the children was very positive. There is also no dispute that his home was appropriate for the children as his home study was approved. However, there was evidence that James was required to complete certain requirements by the court. These included 1) obtaining a drug abuse/mental health assessment and following through with all recommendations and 2) completing a CRAFT class so he would know how to protect the children from the parents when they were under the influence of drugs. James took two assessments in early 2020, but refused to follow up on the recommendations because he disagreed with them. He did complete a third assessment, but not until just before the court date. The record does not show what the requirements of that assessment were. James had not been able to complete the CRAFT class, though he claimed it was because of staffing and no evidence was presented that contradicted this. Additionally, James had one drug screen returned positive for marijuana and he admitted that he had used it on one occasion. The evidence in this case is such that the trial court could conclude, by clear and

convincing evidence that permanent custody was in the children's best interests. As such, the trial court did not err in denying the motions for legal custody filed by James and the fourth assignment of error is overruled.

{¶28} Having found no prejudicial error in the particulars assigned and argued, the judgments of the Hancock County Court of Common Pleas, Juvenile Division, is affirmed.

***Judgments Affirmed***

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/hls**