[Cite as *In re D.R.*, 2024-Ohio-2411.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: D.R. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J.<br><br>Case No. 2023CA00166<br><br><u>O P I N I O N</u> |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2022JCV00423 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 24, 2024 |
| APPEARANCES: | |

| | |
|---|---|
| For Mother | Trial Counsel for Father |
| RICHARD D. HIXSON<br>3808 James Court, Suite #2<br>Zanesville, Ohio 43701 | BRIANNA BROTHAG DILLON<br>201 Cleveland Avenue, S.W., Suite #104<br>Canton, Ohio 44702 |
| Counsel for Appellee, S.C.J.F.S. | Guardian ad Litem |
| CRISTINA EOFF<br>BRANDON J. WALTENBAUGH<br>221 3rd Street, S.E.<br>Canton, Ohio 44702 | DEAN GRASE<br>116 Cleveland Avenue, N.W.<br>Canton, Ohio 44702 |

*Hoffman, P.J.*

**{¶1}**   Appellant R.R. ("Mother") appeals the December 6, 2023 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights, privileges, and responsibilities with respect to her minor child ("the Child") and granted permanent custody of the Child to appellee Stark County Department of Job and Family Services ("SCJFS").

STATEMENT OF THE CASE AND FACTS

**{¶2}**   Mother and B.R. ("Father"), collectively "Parents," are the biological parents of the Child. On April 18, 2022, SCJFS filed a complaint, alleging the Child was dependent, neglected, and/or abused.[1]

**{¶3}**   SCJFS had investigated the family on numerous occasions due to concerns related to Father's anger management issues, the Child having injuries of unknown origin, Mother's physical limitations due to cerebral palsy, Mother's mental health issues, and the home conditions. SCJFS became involved with the family again in March, 2022, after receiving a report the Child had petechiae and scratches around the neck, as well as bruises on the right cheek, the back, and the arms, which the Child stated were caused by Father throwing the Child off the bed. The home conditions were unsanitary, and the Child had lice. Following an assessment at Akron Children's Hospital, medical personnel concluded the Child's "injuries were concerning for physical abuse." Complaint at p. 2, unpaginated. The Child was diagnosed with failure to thrive, secondary to nutritional

---

[1] Father filed a separate appeal. This Court affirmed the trial court's termination of his parental rights and the grant of permanent custody to SCJFS. *In re: DR*, 5th Dist. Stark No. 2024CA00003, 2024-Ohio-1819.

neglect, and medical neglect related to plagiocephaly.[2]   The Child also was developmentally delayed.

**{¶4}**   Mother and Father agreed to an out-of-home safety plan with the Child's paternal great aunt and uncle. On April 14, 2022, the relative caregivers asked SCJFS to remove the Child from their home as soon as possible as they were no longer willing or able to provide full-time care for the Child. The filing of the complaint followed.

**{¶5}**   The trial court conducted an emergency shelter care hearing on April 19, 2022, and placed the Child in the temporary custody of SCJFS. On April 20, 2022, the trial court appointed Attorney Dean Grase as guardian ad litem ("GAL") for the Child. At the adjudicatory hearing on May 11, 2022, Mother and Father stipulated to a finding of neglect. SCJFS dismissed the allegations of dependency and abuse. The trial court found the Child to be neglected and ordered the Child remain in the temporary custody of SCJFS. The trial court also approved and adopted the case plans for Mother and Father. The trial court conducted review hearings on October 14, 2022, and March 14, 2023, and maintained the status quo.

**{¶6}**   SCJFS filed a motion to extend temporary custody on March 9, 2023. The trial court conducted a hearing on the motion on April 18, 2023. Mother and Father stipulated to the extension. The trial court extended SCJFS's temporary custody of the Child to October 18, 2023.

**{¶7}**   On September 6, 2023, SCJFS filed a motion for permanent custody. Due to a failure to properly notarize its first motion for permanent custody, SCJFS filed an

---

[2] " 'Plagiocephaly' is an umbrella term used to describe different types of skull deformations, including flat Head syndrome."  See, Cleveland Clinic,
https://my.clevelandclinic.org/health/diseases/10691plagiocephaly-flat-head-syndrome.  Accessed 29 March 2024.

amended motion for permanent custody on September 13, 2023. Mother filed a motion for change of legal custody of the Child to a maternal aunt. The GAL filed his final report on November 28, 2023, recommending permanent custody of the Child be granted to SCJFS. The GAL also recommended Mother's motion for change of legal custody be denied as any further change in the Child's placement would "almost certainly be highly detrimental to [the Child]." November 28, 2023 Report of Guardian ad Litem.

{¶8} On December 5, 2023, the trial court conducted a hearing on SCJFS's motion for permanent custody and Mother's motion to change legal custody. The following evidence was presented at the hearing.

{¶9} Kelli Williams, the SCJFS caseworker assigned to the family, testified the Agency became involved with the family in March, 2022, after receiving a report the Child had petechiae eye, scratches on the neck, and bruises on the face, neck, back, and arms. The Child stated Father had thrown the Child out of the bed. The Child missed several days of school due to these injuries. The Child revealed incidents of domestic violence including Father cutting Mother with a knife. The Child also disclosed, and Mother admitted, Mother cut herself. The Child was diagnosed with failure to thrive. Williams noted SCJFS attempted an out-of-home safety plan with relatives, but after a month, the relatives were no longer able or willing to keep the Child in their home. Thereafter, SCJFS filed a complaint, and the Child was placed in a foster home.

{¶10} Williams detailed Mother and Father's case plans. Mother and Father were required to complete parenting assessments at Summit Psychological and follow all recommendations. In addition, Mother and Father were to complete Goodwill parenting

classes. Although Parents each completed the parenting classes, each received certificates of non-compliance. Goodwill did not recommend reunification.

**{¶11}** Williams noted SCJFS had been involved with the family "at least once a year [during the course of the Child's short life] to tend to concerns of neglect." Transcript of Proceedings at p. 10. Parents do not appreciate the risk they pose to the Child. The unsanitary home conditions were an ongoing concern. The home was filthy with dog feces and vomit on the floor. The house was also infested with mice. Father trapped the mice and then held them in an aquarium, explaining he planned to release them all at once. Williams explained neither Mother nor Father appreciated the unlivable conditions of the home.

**{¶12}** With respect to the Child, Williams stated the Child has made substantial progress. The Child had been diagnosed with failure to thrive, but after being hospitalized and in foster care, the Child has gained weight. The Child had significant speech delays, but has made tremendous progress in that regard. The Child is engaged in speech therapy and has an IEP ("individual education plan") at school. Although Mother and Father say they love the Child, Parents have not demonstrated that commitment by making the necessary changes.

**{¶13}** Regarding placement with Mother's maternal aunt, Williams explained a home study was not conducted as SCJFS had already decided to place the Child with a school intervention specialist and her husband. The intervention specialist worked with the Child. The Child had a relationship with the intervention specialist. The Child had never met the aunt until the aunt attended one visit. Although the aunt attended the visit,

prior to it, she informed Williams she no longer wanted to pursue custody of the Child. Following the visit, the aunt told Williams the visit solidified the decision.

{¶14} Dr. Michael Stranathan, a psychology assistant with Summit Psychological Associates, completed Mother's parenting evaluation. Dr. Stranathan had several concerns regarding Mother. Specifically, Dr. Stranathan testified Mother had significant mental health issues including "persistent mental illness" and auditory hallucinations. In addition, Mother had a history of maladaptive behaviors and personality disturbances as well as personality traits associated with dependent personality disorder and borderline personality disorder. Mother also had a history of cognitive disabilities, and problems with concrete thinking and failing to understand the natural consequences of her actions.

{¶15} Dr. Stranathan noted Mother minimized the concerns which led to the involvement of SCJFS. Dr. Stranathan indicated Mother's limitations negatively impacted her ability to safely parent the Child. He recommended Mother engage in individual counseling to address her relationships, attend all medical appointments for the Child, and complete parenting classes. Dr. Stranathan did not recommend unsupervised visits between Mother and the Child until Mother successfully and fully completed his recommendations.

{¶16} Fire, the supervisor of the parenting program at Goodwill Industries, testified the parents involved in the program are provided with a variety of opportunities to obtain help for anything they might need. Neither Mother nor Father asked for individual help while they were in the program.

{¶17} When Fire and Amy Humerighouse, the Goodwill parenting instructor, arrived at the home for a scheduled visit, Fire had to stop Humerighouse from stepping

in a pile of animal feces. Fire noted there were animal feces throughout the house. The entire home was filthy, there were piles of clothing strewn about, bags of dirty laundry shoved into closets which were covered in dust, and mildew and debris in the bathroom. The Child's bedroom was "a makeshift sunroom of sorts, on the first floor." Fire was concerned about the appropriateness of the Child's bedroom as there were no screens on the windows and the windows did not properly lock. The concerns with the home conditions were discussed with Parents prior to the visit. Fire concluded the condition of the home demonstrated Parents' refusal and/or inability to absorb what was being taught in the parenting classes.

{¶18} Fire testified Mother did not accept responsibility for her role in the initial involvement of SCJFS. Mother blamed Father, the Child's school, and other people for the removal of the Child. Fire noted Mother's hygiene was poor throughout SCJFS's involvement. Mother showed "a lack of affect" during her interactions with the Child. Mother failed to adequately engage with the Child. There was no improvement over time.

{¶19} Kelly Williams testified during the best interest portion of the hearing. Williams indicated SCJFS had been involved with the family since April, 2022, approximately 19 months. When the Child arrived in SCJFS's custody, the Child had significant needs. The Child was diagnosed with failure to thrive, had significant speech delays, and had undiagnosed attention deficit hyperactivity disorder ("ADHD"). Williams stated the Child had "made tremendous progress in regard to her physical development and growth." Tr. at p. 74. The Child has an IEP at school due to her learning disability and was recently prescribed medication for ADHD. The Child works with a behavioral intervention specialist at school. The Child underwent genetic testing and a

neurodevelopmental assessment at Akron Children's Hospital. The Child was diagnosed with post-traumatic stress disorder ("PTSD") due to the domestic violence witnessed in the home.

{¶20} The Child was in a foster home for approximately one year, however, the foster family was unable to keep the Child long term. The Child is currently in kinship placement. Williams testified the kinship provider is able to meet the Child's significant needs. The kinship provider is an intervention specialist at the Child's school and is versed in the special needs of the Child. The Child had a relationship with the kinship provider prior to the placement. The Child is happy in the placement and attached to everyone in the home.

{¶21} After the foster family was unable to continue caring for the Child, SCJFS investigated relative placement for the Child. Parents provided the name of an aunt. The aunt had never met the Child and SCJFS arranged for the aunt to meet the Child at a visit. SCJFS ultimately decided to place the Child with the kinship provider because of the Child's existing relationship with the kinship provider. The Child expressed a desire to stay in the current situation.

{¶22} The Child did not appear to enjoy visits with Parents. The Child has no problem separating at the end of the visits. Williams did not observe affection between the Child and Parents. The Child called Parents by their first names despite being told to call them "Mom" and "Dad." Williams did not believe the Child would be harmed if Parents' rights were severed. Williams added the benefit of permanency outweighed any harm. She further opined permanent custody was in the best interest of the Child.

**{¶23}** Via Judgment Entry filed December 6, 2023, the trial court terminated Parents' parental rights and granted permanent custody of the Child to SCJFS. The trial court found the Child had been in the temporary custody of SCJFS for twelve or more months of a consecutive 22-month period. The trial court also found Parents failed to remedy the conditions which caused the Child's removal. The trial court determined it was in the Child's best interest to grant permanent custody to SCJFS.

**{¶24}** It is from this judgment entry Mother appeals, raising the following assignments of error:


I. THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY AND TERMINATION OF APPELLANT'S PARENTAL RIGHTS WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE WEIGHT OF THE EVIDENCE.

II. THE CASE PLAN OF STARK COUNTY JFS WAS NOT GUIDED BY THE GENERAL PRIORITIES ENUMERATED IN R.C. 2151.412(H).

III. THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY OF D.R. TO STARK COUNTY JFS VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW.

IV. MOTHER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO ASK THE COURT TO CONSIDER GRANTING LEGAL CUSTODY TO THE KINSHIP PLACEMENT OF D.R. RATHER THAN GRANT PERMANENT CUSTODY.

**{¶25}** This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

**{¶26}** In her first assignment of error, Mother maintains the trial court decision to terminate her parental rights and award of permanent custody of the Child to SCJFS was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

**{¶27}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

**{¶28}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶29}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not

abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶30}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

**{¶31}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶32}** Mother concedes the Child has been in the temporary custody of SCJFS for twelve or more months of a consecutive twenty-two-month period; therefore, "the circumstance delineated in R.C. 2151.414(B)(1)(d) is present, and the analysis need not go further as to the first prong of permanent custody." Brief of Appellant at p. 9. The 12 of

finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458, ¶ 45.

**{¶33}** Mother failed to present any argument in support of her assertion the trial court's best interest finding was against the manifest weight of the evidence and not supported by clear and convincing evidence. "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *State v. Romy*, 5th Dist. Stark No. 2020CA00066, 2021-Ohio-501, 168 N.E.3d 86, ¶35, citing *Thomas v. Harmon*, 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, ¶14. Therefore, we may disregard this assignment of error. App.R. 12(A)(2). Nonetheless, in the interest of justice, we shall review the trial court's best interest finding.

**{¶34}** As set forth in our Statement of the Facts and Case, supra, we find there was clear and convincing evidence Mother failed to remedy the problems which initially caused the removal of the Child from Parents' home, and the Child cannot or should not be placed with Parents in a reasonable time. Mother did not accept responsibility for her role in the SCJFS's involvement with the family, blaming Father, the Child's school, and other people for the removal of the Child. Mother's hygiene was poor throughout SCJFS's involvement. Mother showed "a lack of affect" during her interactions with the Child and failed to adequately engage with the Child. Mother showed no improvement over time. Mother had significant medical and mental health challenges which she simply did not address. In addition, the Child is doing well in her current placement. The kinship provider is an intervention specialist at the Child's school and is versed in the special needs of the

Child. The Child had a relationship with the kinship provider prior to the placement. The Child is happy in the placement and attached to everyone in the home.

{¶35} Based upon the foregoing, we find there was clear and convincing evidence to support the trial court's finding a grant of permanent custody to SCJFS was in the best interest of the Child.

{¶36} Mother's first assignment of error is overruled.

## II, III

{¶37} We elect to address Mother's second and third assignment of error together. In her second assignment of error, Mother argues SCJFS did not follow the general priorities enumerated in R.C. 2151.412(H), in developing her case plan. In her third assignment of error, Mother asserts the trial court's award of permanent custody to the Agency violates her constitutional right to due process. Specifically, Mother contends R.C. § 2151.412(H)(2) creates a statutory preference or priority a child be placed with a relative or kinship placement when possible. Mother submits, because the Child's kinship placement was ready and willing to take legal custody, the trial court should not have terminated her parental rights and granted permanent custody to SCJFS. We disagree.

{¶38} R.C. § 2151.412(H) provides, in relevant part:

> In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
>
> * * *

(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;

* * *

(5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency.

R.C. 2151.412(H).

{¶39} R.C. § 2151.412(H)(2) instructs a juvenile court to prioritize placing a child in the legal custody of "a suitable member of the child's extended family" when developing and reviewing a case plan, but "there is no such requirement in permanent custody determinations." *In re Tr.T.*, 8th Dist. No. 106107, 2018-Ohio-2126, ¶ 17, citing *In re J.F.*, 8th Dist. No. 105504, 2018-Ohio-96, ¶ 41, 102 N.E.3d 1264. See also *In re A.S.*, 4th Dist. No. 16CA878, 2017-Ohio-1166, ¶ 59; *In re J.A.*, 9th Dist. No. 24134, 2008-Ohio-3635, ¶ 26.

{¶40} Because the matter was before the trial court on a motion for permanent custody, we find   R.C. § 2151.412(H)(2) was inapplicable.   Moreover, assuming, arguendo, the statute was applicable, the "priority" established under R.C. § 2151.412(H)(2) provides "only discretionary guidance and is not mandatory." *In re J.A., supra* at ¶ 25. The language of [R.C. 2151.412(H)] is precatory rather than mandatory. *Matter of Rollinson*, 5th Dist. Stark No. 97 CA 00206, 1998 WL 517866. Consequently, the statute does not require the trial court to act in a specific manner, but rather suggests criteria to be considered in making its decision regarding case plan goals. *In re M.O.*, 4th Dist. Ross No. 10CA3189, 2011-Ohio-2011, ¶ 15.; *In re T.P.*, 3rd Dist. Hancock No. 5-21-36, 2022-Ohio-2995, ¶ 26. (the language of this statute is precatory, not mandatory as is shown by the use of the word "should" instead of "shall").

{¶41} This Court as well as a number of other Ohio appellate courts have rejected arguments similar to the ones raised herein. See, *Matter of K.B.*, 5th Dist. Stark No. 2023 CA 00072, 2024-Ohio-491, ¶ 68; *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 22; *In re O.D.L.*, 2d Dist. Montgomery No. 28865, 2021-Ohio-79, ¶ 16 ("awarding permanent custody to [an agency] without investigating all possible relatives for placement, standing alone, is not reversible error"); *In re A.C.H.*, 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶ 44 ("the trial court had no duty to first consider placing the children with appellant's relatives before granting [the agency] permanent custody"). Even when a potential relative has been identified, "[a] juvenile court need *not* find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting an agency's motion for permanent custody." (Emphasis sic.) See also, *In re A.B.*, 12th Dist. Clermont No. CA2013-03-024, 2013-Ohio-3405, ¶ 34 (Citation omitted). "No

preference exists for family members, other than parents, in custody awards." *In re C.H.*, 8th Dist. Cuyahoga No. 103171, 2016-Ohio-26, ¶ 27 (Citations omitted).

**{¶42}** Further, as noted in our Statement of the Facts and Case, supra, Mother's maternal aunt initially expressed interest in pursuing custody, but subsequently advised SCJFS she was no longer wished to do so. Because neither Mother's maternal aunt nor the kinship provider filed a motion requesting legal custody of the Child, the juvenile court lacked authority to award legal custody to either individual. See *In re L.B.*, 9th Dist. No. 20CA0008-M, 2020-Ohio-3834, ¶ 19.

**{¶43}** Based upon the foregoing, Mother's second and third assignments of error are overruled.

IV

**{¶44}** In her final assignment of error, Mother raises a claim of ineffective assistance of counsel.

**{¶45}** "A parent is entitled to the effective assistance of counsel in cases involving the involuntary termination of his or her parental rights." *In re B.J. & L.J.*, 12th Dist. Warren Nos. CA2016-05-036 and Warren Nos. CA2016-05-038, 2016-Ohio-7440, ¶ 68. This is because "parental rights involve a fundamental liberty interest, procedural due process, which includes the right to effective assistance of counsel * * *." *In re Tyas*, 12th Dist. Clinton No. CA2002-02-010, 2002-Ohio-6679, ¶ 4, citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1998).

**{¶46}** "In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases." *In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 40.

**{¶47}** To prove an allegation of ineffective assistance of counsel, an appellant must satisfy a two-prong test. First, an appellant must establish counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, an appellant must demonstrate he or she was prejudiced by counsel's performance. *Id.* To show he or she has been prejudiced by counsel's deficient performance, an appellant must prove, but for counsel's errors, the result of the trial would have been different. *Bradley,* supra, at paragraph three of the syllabus.

**{¶48}** An appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶49}** Mother asserts she was denied the effective assistance of counsel as the result of trial counsel's failure to "file a different or alternative request for legal custody to be granted to * * * the kinship placement [the Child] was placed with for much of the case and at the time of the permanent custody hearing." Brief of Appellant at p. 24. Mother explains, "Filing a motion or making such a motion on the record is a simple procedural step that would have allowed the trial court to consider legal custody, rather than permanent custody, to the kinship placement and could easily have ended up preserving the parental rights of Mother." *Id.*

**{¶50}** Assuming, arguendo, trial counsel's performance fell below an objective standard of reasonable representation, we find Mother cannot satisfy the second prong of the *Strickland* test. Having found the trial court's decision to grant permanent custody

of the Child to SCJFS was supported by clear and convincing evidence and was not against the weight of the evidence, supra, we find there is not a reasonable probability the trial court would have reached a different determination regarding the custody of the Child.

**{¶51}** Mother's fourth assignment of error is overruled.

**{¶52}** The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, P.J.
Wise, J.  and
Baldwin, J. concur